May it please the court. Good morning, Judge Southwick, Judge Willett, and Judge Oldham. My name is Joseph Plumbar, and I'm here representing the appellant, the appellants, Ms. Alejandra, Ms. Esmeralda Alejandro, and Ms. Sylvia Hernandez, whole counsel, along with Ms. Allie Booker, who is sitting at the table, who also will be arguing today. Is there any particular way you are planning to divide up the argument? Yes, Your Honor. I am going to be discussing the admissions, Ms. Alejandro's claim that was dismissed by the district court, and Ms. Booker is going to be discussing Ms. Sylvia Hernandez's case that was dismissed by the district court, which is the relation back claim. We'll try to stick to that, but be aware, judges don't always follow your plans. I understand, Your Honor. We want to answer questions in that area. I understand. Your Honor, we're here today because, Your Honors, we're here today because we're here to discuss whether summary judgment was properly granted against Ms. Alejandro. And our argument to this court is that the court misapplied the law surrounding the deemed admissions that were admitted by the court, and because there are disputed facts sufficient to warrant a trial on the merits in the matter regarding Alejandro and the defendants. The appellees submitted admissions to the plaintiffs to answer regarding in this case. They submitted 16 admissions. Admissions 1 through 3 addressed the city of Pasadena, which was at the time dismissed from the case. They were not a part of the case, and they had been dismissed by the district court upon a motion to dismiss. So these admissions do not go directly to Ms. Alejandro's case as far as the facts, specific facts of her case. And that's the issue that we have with all of plaintiff's admissions is that they don't rely or ask a specific set of facts from the appellants, especially Ms. Alejandro. They also ask for legal conclusions and positions in these requests for admissions. These legal conclusions and admissions are not allowed by federal rules to Procedure 36 and have been discussed in Thompson v. Beasley, which has come before this court. Let's say we agree with you that at least some of these requests for admissions either don't apply to your client or at least to Alejandro. Well, he's the only one, I guess, that that particular ruling applies to. Maybe some do. It does seem to me the tail end of the 16 are factual admissions, though they may not matter that much in the ultimate resolution. Where does that leave us? That leaves us back in Ms. Alejandro's case being sent back to the district court. Why? Don't we have the right to affirm on any basis supported by the record? Why don't we start there? Do we? A record where there's not a dispute of facts. Supported by the record. This is summary judgment, so it has to be supported by the record. There's no genuine dispute of material fact as to something that might be an alternative way to uphold the judgment. And what the government says, what the defendants say, is that your client committed various offenses for which she could have been arrested. I think not in the admissions that, not in their submitted admissions to us. What about the interference with the officer, that a reasonable officer would have taken what she had done on reaching and grabbing his hand? Let me ask, is it disputed by her? I looked at her deposition. I don't see where she disputes that she did grab the officer's hand. She doesn't admit it, but she doesn't dispute it. She does dispute, and also not only the deposition, but the video, which was taken at the scene, disputes that. You can see more in the video than I can. The video shows the people on the outside of the car, doesn't it? It doesn't really show what's going on inside. It depends which video you are looking at. If you're looking at the dash cam video, which was submitted out of Officer J. Smith's car, it does show the inside of the car. It shows the inside of the car where Ms. Sylvia Gonet was handcuffed to the headrest, where Ms. Sylvia Gonet was tased multiple times. And you also see a side visual of Ms. Esmeralda Alejandro speaking to the officer, telling him that Ms. Gonet is a diabetic and that she has medical issues. Well, but did you see the grabbing of the hand one way or the other? No, you don't, which makes it a disputed fact, Your Honor. Well, how is it disputed? She doesn't dispute it in her deposition, and he says it in his affidavit. So what's the dispute? The dispute is that— The factually disputed is the omissions that they did not ask if she grabbed the hand of the officer, which is what they're relying on for their motion for summary judgment, which is why this case was dismissed. Well, start with—which may be an incorrect premise, and I will allow that. We need to be sure. But start with the premise that it is undisputed on this record, what the officer said in his affidavit, that Ms. Alejandro grabbed his hand, which he took to be interference with his efforts to subdue or otherwise deal with the other person in the car. So take that as undisputed. Is it that interference with the lawful actions by the police officer and, therefore, a reasonable officer, or at least all reasonable officers would not know that it would be improper to arrest her for that? Your Honor, there is a dispute. If all of you have is the affidavit— Well, no, I said take it as a premise. I'm saying maybe I'm wrong. Okay, okay. So I want you to deal with the legal issue. The legal issue is if that is where the officer stands, then, yes, he would have had probable cause to arrest Ms. Alejandro. Yes. But that is not the underlying premise in this case. Okay. What else do you have? In addition, most of the questions that are asked, there is strong controversy evidence, too, in his admissions. Again, they were improperly couched legal conclusions. There is a video to show that the admissions that were deemed admitted were incorrect, and they don't specifically ask the facts, which I think is very important to this case. There are not specific fact admissions here that address the facts of what happened on that day, that they're relying upon for their summary judgment. All right, counsel. We have your argument. Good morning. Good morning. Very excited to be here. Me, too. If I can kind of piggyback on the question that Your Honor Southwick asked Mr. Plumbar, the issue is that there's no finding in this particular case. Because the case was dismissed, so if we're looking at things legally, Your Honor, the case was dismissed, the interference with public duties. So because there's no finding, now that's a fact issue. That's going to be a fact issue for the fact finder in this particular case, which is why they're not able to say that there's no controverting evidence. Had they had a conviction, Your Honor, there would be some sort of legal finding made, and we could not controvert that legal finding with our evidence. But there's no legal finding because that case was dismissed. If I may. We've all been there. I know. Sorry. Notwithstanding the fact that you can ask me any question you want, of course, I'm here to begin my argument on Mrs. Sylvia Hernandez's claims that were properly pled, but with the wrong plans. This action was a survival claim in and when it was filed. Why? Because she was already deceased. And we already know that the only issue with a survival claim being different than that of a personal injury claim with a person who was alive is that they're deceased, so that the plaintiff steps in the shoes of the deceased person and carries on the exact same claim that the deceased person would have had if they were alive. So we wanted to put that out there because that's very important. We just had the wrong defendant. And I think the fact that she's deceased has thrown the court off, the district court, but this court has already decided this very same thing in Nombre. All we're doing is substituting parties. You can switch proper plaintiffs in a survival action. You guys have already determined that this past month, maybe a few weeks ago. And our case is analogous to the facts in Nombre. That was before this very court. The issue is, yes, the statute of limitations had run, okay, but there's no issue. Mrs. Sylvia Hernandez is not bringing any new claims. She's simply stepping in the shoes of the plaintiff. There's no prejudice. They're not prejudiced. They're not caught by surprise. And so there's no reason that this is an improper switch in parties. And because there's no improper switch in parties, the claim easily relates back. There were some issues within our brief as well as within the district court's order that spoke of the changing of a statute of limitations from four years to two. We improperly misstated the law, and we would argue that the district court did as well. The issue is that an error at law can bring a survival action in a district court, and they can maintain that survival action for four years without administering the estate. We were forced to administer this estate on the motion to dismiss stage. We could not, of course, we survived the motion to dismiss, so there was no error for appeal on that basis. However, when the defendants filed or the appellees filed their summary judgment, it was granted on those grounds, so at this time we complain of that. Because an error at law can maintain a claim, we pled in our amended complaint that she was an error at law. We did plead her as an administrator because we were forced. The case was abated for, I believe, 60 to 90 days for us to administer. Of course, there was nothing we could do. We had to do what we were told and what we were ordered to do. So when we came back just to preserve error for appeal in case there was an issue such as this, we stated that she was an error at law. So we just wanted to bring that to the court's attention as well, that there was a misstatement in the order. It's pretty straightforward, and I think we kind of took a winding road to get there. But our claims survive. With respect to Sylvia Hernandez, there are no new claims. Nothing's different. And we hit all the points of the relation back theory that this court has instituted and that has long been settled. All right, counsel. Do you have anything else for us? Sir? Do you have anything else for us? I do not, Your Honor. Well, we'll take the three minutes back. Thank you, Your Honor. Thank you. Do you have time for rebuttal? Yes. May I reserve that? Yes. Good morning, and may it please the Court. William Halfand for Officers Smith, Salazar, and Thornton. I sometimes forget Officer Thornton because he played such a minor role in this case. There's no evidence that he should have been sued for any reason. Let me take the appellant's argument in the order in which they presented it. It is correct to say that some of the requests for admissions dealt with the plaintiff's appellant claims against the city, but the others dealt with the claims against the officers. And Ms. Alejandro, for some reason, although represented by the same counsel, had asked on more than one occasion for leave to amend responses to requests for admissions that had been deemed admitted, in which the trial court pointed out had been deemed admitted. Ms. Alejandro's counsel never asked for the opportunity to amend those deemed admissions, and having been deemed as admissions, they are fatal to Ms. Alejandro's case. It's hard to argue otherwise, and I think Judge Ellison demonstrated that in his succinct opinion. But turning to Judge Southwick's question and the point that the appellees have raised, that even if the court were to find that for some reason the admissions were— Your Honor. It does seem to me there's a pretty good argument that most of those are not valid requests for admission. I'm not asking you to concede that, but isn't there a problem that those are really legal conclusions? A lot of them go into qualified immunity. It's one thing to say what is the factual basis of what is the policy that the city might have on a certain question, but to say what policy—I forget how your first question or first few questions are listed, insofar as the city is concerned—what policy would fit the qualified immunity standard? Well, policy is the wrong word. What policy would fit the 1983 standard? It does seem to me an improper use of requests for admissions. The question is not well put, but can you respond to it? Well, Your Honor, maybe if it gains me a little leeway, I'll concede those as they relate to the city because they're now moot. I don't—respectfully, I don't agree. I think that the way that they're worded, they ask whether the plaintiff has disclosed or identified or has produced evidence that would allow the plaintiff to prove the elements of the plaintiff's claim. They are not geared toward a legal question of whether an officer, for example, is immune. And particularly when we talk about the ones related to the officers, I'm looking at them. They're on pages 9 and 10 of the brief. They've been excised. They're also at records 1776, 1958, 2207, and 2213. And they specifically say the plaintiff has not disclosed or produced a document which shows. And then it relates to the legal test of immunity. Your Honor is correct about that. But, of course, this Court has held admissions that request a factual admission that relate to a legal test are proper admissions. And so if I ask the plaintiff in a—I'm a simple guy, as Your Honor knows. I'll be simple. In a car wreck case, the plaintiff has no documents or other evidence that shows that the defendant was negligent. That is not a legal conclusion. That is a question asking whether there is—that's a factual question, which is whether the plaintiff has evidence. And each of those requests, as they relate to the officers, Your Honor, specifically ask whether the plaintiff has disclosed or produced or otherwise identified information that relate to those legal tests. What is your best case to support these are proper requests? I'm going—may I grab my brief, Your Honor? I didn't— It's in your brief? It is in my brief, Your Honor. All right. I'm happy—if you want me to grab it, I can tell you. I apologize, Judge. When I bring it, I don't need it. When I don't bring it, I seem to need it. I'll just bring it from now on. It's so close. I'm happy to submit it by 28J if you want me to just tell you the name of the case afterwards. Thank you, Judge. But, Your Honor, I would submit an excellent point in questioning Mr. Plumbar, which is even if the court were to say that the admissions are not sufficient on their own to require summary judgment, the evidence certainly is. Ms. Alejandro did not brief in any practical manner in this court the question of the existence of evidence to sustain her burden, either to show an arrest without probable cause or a lack of qualified immunity for those officers who believed that there was probable cause. In fact, there are two pages in her opening brief, pages 19 and 21, that simply argue about the inconclusivity of the camera in the officer's dash. The camera that Ms. Alejandro used to videotape is immaterial to the question of probable cause for Ms. Alejandro's arrest because by the time In fact, at records 1732 and 33, and again at 1737 and 38, Ms. Alejandro admits that she reached into the back seat to try to grab something from Ms. Gonay, I think it was the cell phone, while Officer Smith was attempting to subdue her. There's no dispute as to that occurrence. And Ms. Alejandro never denies, not only does she not deny doing that, she doesn't deny that Officer Smith could have reasonably perceived that to be efforts to interfere with his hands trying to grab Ms. Gonay's hands to handcuff her. So the question under the probable cause test is could a reasonable officer have believed that that was an effort to interfere? Again, the fact that it occurred is undisputed, and Ms. Alejandro presents no evidence that a reasonable officer could not have perceived that to be active interference. Is it true that, you were addressing it earlier, no camera shows any of what was going on inside the car insofar as this grabbing of the arm is concerned, hand? Not sufficiently to show Ms. Alejandro's hand movements to which she admits in deposition, correct Your Honor? I just want to check that block, want to make sure. I think that that's true. But respectfully, the Court doesn't need a video because Ms. Alejandro agrees in deposition that that's exactly what she did. And so the Court would have to find that no reasonable officer could have perceived that to be interference to find that The one thing that the officer is relying on, there was some potential, whatever she was saying, whatever criticism she was expressing towards what was happening to the driver, are you relying on any of that as an additional interference, a sign of what to make of the grabbing of the arm or otherwise? No, Your Honor. It is the physical effort to reach for Ms. Gonay at the same time that Officer Smith was attempting to handcuff her, to which Ms. Alejandro admits, which Officer Smith perceived, and I would submit reasonably so, as attempts to stop him from handcuffing Ms. Gonay. In fact, I think the truth is that that's what Ms. Alejandro was attempting to do. But as to verbal criticism, no, Judge, I lost that one many years ago. I didn't want you to have to lose it again. I just want to see if you're relying on that. Not anymore. No, I think verbal criticism is within the constitutional right of all of us to question the police. It may not be well advised, but it is constitutionally permissible. No, Officer Smith arrested Ms. Alejandro, as the report demonstrates, and as the district attorney charged her for physically interfering with Officer Smith's efforts to arrest Ms. Alejandro. And if I may then, even if the court thinks there's some question as to whether that establishes probable cause, the court still has to grapple with the question of qualified immunity, which again was Ms. Alejandro's burden to disprove and a burden which she simply neglected. And Officer Smith's testimony demonstrates that a reasonable officer could have perceived her conduct to be physical interference. Mr. Otto, the assistant district attorney, perceived it to be in violation of the state law regarding interfering with a peace officer. And so even if we get to the level of qualified immunity, because it was the plaintiff's burden to disprove that immunity and whether the court chooses to consider the admissions which seem to demonstrate loudly that there is no evidence to dispute immunity or simply look at the record on the summary judgment, the court will see that there was no evidence to dispute the presumption of immunity. I would be remiss if I didn't speak to both Officers Salazar and Thornton briefly, which would be to – oh, I should point out one other thing. As Your Honor, Judge Southwick pointed out as well, even if there's a question of interference, the record demonstrates Ms. Alejandro violated the transportation code on several counts, four that are enumerated in the brief, not the least of which were allowing Ms. Goney to drive, knowing that Ms. Goney did not have a driver's license, and allowing Ms. Goney to drive, knowing that Ms. Goney was actually expressly excluded from Ms. Alejandro's insurance policy, therefore driving without insurance. A driver, I'm sorry, owner of a vehicle who entrusts their vehicle to someone without a license or a suspended license or knowing that they have no insurance violates the transportation code. In Atwater v. Lago Vista, the Supreme Court made clear that those transportation code violations themselves provide probable cause for arrest, even if they weren't asserted at the time as the basis for the custodial arrest. I should point out that Officer Salazar – yes, sir. I need to speak up a little bit. Pardon me. I need to make it clear when I'm asking a question. The affidavit by Officer Smith refers to some of that. Remind me, what was learned at the time and what became known later? I assume that she did not have a driver's license was learned at the time. How much of the rest of this was known to Officer Smith at the time? If Your Honor means by the time – By that she was not authorized under the insurance to be a driver, that it would be necessary for Alejandro to know that she did not have a license. So to what extent was that known at the time, whether she was asked? Does most of this come up later and is being used maybe properly to justify the arrest? Well, the suspended driver's license was known at the time. When I said at the time, I was wondering if Your Honor meant at the time that Ms. Alejandro was taken into custody by Officer Salazar versus when she was charged by the district attorney's office. Out there at the scene after the U-turn, how much of that was known? Well, at the time that – at the scene, Your Honor, it was known that Ms. Alejandro – that Ms. Goni had a suspended driver's license. I don't know the answer and I don't think the record tells us when Officer Smith learned that Ms. Alejandro's insurer had notified her that Ms. Goni could not operate the vehicle with insurance. It's an affidavit, but it wouldn't clear to me he was saying he knew that at the time. Proceed. Thank you, Judge. Lastly, as it relates to Ms. Alejandro, I should point out neither Officer Salazar nor Officer Thornton arrested Ms. Alejandro. The record is undisputed, and in fact, Ms. Alejandro sues Officer Smith for the decision to arrest her. What Officer Salazar did was to take Ms. Alejandro into custody at Officer Smith's direction because she had been arrested, and under White v. Pauley, Officer Salazar had the authority to do that and rely upon Officer Smith's arrest decision, which he made before Officer Salazar arrived. I couldn't tell you why Officer Thornton is being sued other than his presence on the scene, and one of the reasons I can't tell you is because the briefing is completely silent on why Officer Thornton was sued, both at the summary judgment level and in the appellate briefing. Turning then to Ms. Hernandez, Ms. Gonay's executor, Ms. Booker said the problem was that they sued in the name of the wrong plaintiff. The record demonstrates that with all due respect to the deceased, they sued in the name of no plaintiff at all. Upon Ms. Gonay's death, there was no authority whatsoever to sue in her name, and notably, Ms. Booker, speaking in the first person in her briefing at 2062, admits that she chose to file a lawsuit in Ms. Gonay's name, knowing that Ms. Gonay was deceased and thinking that that was a mechanism by which she could reserve the option to pursue a lawsuit later. If I may, I would submit this would be like a plaintiff's attorney meeting somebody who has a personal injury claim and then losing touch with that person and shortly prior to limitations running, suing in a fictitious name, not even in the name of the person who had the legal right to sue, with the idea that one day I might find that plaintiff again or someone who can stand in their stead, and I'll simply submit them then later, in this case three years later, in place of the alias plaintiff. There is no relation back under Williams to a suit for which there was never standing. And the Armas case out of the Eastland Court of Appeals dealt with this very issue and is quite instructive, as Judge Ellison pointed out, as did the Western District Court in Ramirez v. Bayer County, which is cited at page 35 of the brief. The Texas Supreme Court cases which Ms. Hernandez cites are not in any way similar to this one because neither of those cases dealt with the filing of a lawsuit in the name of, and again I mean no disrespect to Ms. Gonade, one's deceased, but in the name of a fictitious person. There was no Ms. Gonade to sue at the time that suit was filed. But again, even if that standing issue were not a problem, the problem that it certainly is, Ms. Hernandez was granted the opportunity to amend her responses to the request for admissions, yet chose not to. And so they were once again deemed admitted. But even if the court, again, does not believe that that is sufficient on its own for summary judgment, when Officer Smith moved for summary judgment, supported by his own testimony, by the two officers Salazar and Thornton, all three of whom were required to remove Ms. Gonade from the police car because of her physical resistance, again Ms. Hernandez submitted absolutely no evidence in support of the contention that Officer Smith had used excessive force. And in the face of three reasonable officers' testimony, and if the court chooses to exclude Officer Smith because he's interested in the outcome, I would submit he's just as reasonable, but Officer Salazar and Thornton demonstrate, again without refutation at all in the record, that Ms. Gonade was physically resisting arrest. So the court has before it a record in which not only do the requests for admissions demonstrate the propriety of summary judgment on the question of force, but the evidence in the record, unrebutted by Ms. Hernandez, as was her duty, either as to the question of the use of force, the constitutionality of the use of force, or qualified immunity. And accordingly, the court should affirm the district court.  If I may, I'd like for things to be very clear. Defense only filed motions to compel against Gonade. That is why we moved to withdraw the admissions deemed admitted against one party and not to the other. Let me start off by saying that the admissions are a part of the record, and if you look at them, they're made out to all plaintiffs, which is pretty ambiguous in a case like this when we've substituted plaintiffs out like we have. So we have to look at the stage that we were at and what plaintiff was there at the time in which they filed their motion to compel. So because they only filed one against Gonade, that is why we responded. The admissions were improperly deemed admitted with all due respect. Why would we go and change things that aren't even properly couched? There's no necessity to do so. Well, the court was certainly calling on some sort of response. You were actively involved in the case, whoever the attorneys were. Hindsight, perhaps, but it does seem to me a response on nothing more than these are improper admissions or something would have been a good thing to do. Can you concede that, not that you're somehow penalized for that, but informing the court of why these are improper or otherwise not just staying silent makes some sense? Yes, Your Honor. Hindsight is 20-20. But at that particular time, the court only opened the gate with respect to Gonade because that is all they filed the motion to compel on, however we should have urged. But the fact that we did not urge, it's no error at all because those admissions were improperly couched. One through three, we've stated, you know, was sent to the city. And then four through 12 speak about Gonade, who was not even in the lawsuit at the time. It was Hernandez at that particular moment. And again, they only asked for conclusions of law. Now, I understand that counsel argues that he ran a Thompson v. Beasley and it was a mix, but it's no mix. This court has been very clear with respect to the balancing test and what you all state is a mixed question of fact and legal conclusion so that it does survive. And the balancing test is not in the defense's favor. Appley's admissions are no good if you look at your standing law with respect to the mix of legal conclusions and fact, Your Honor. Notwithstanding that, he asks or counsel states that he doesn't understand why Thornton was brought into the lawsuit, but Thornton is a bystander. We didn't really speak to Thornton in our brief because his claims were irrelevant with respect to the order that was handed down by the Honorable Judge Ellison. Your Honor, however, it's a bystander claim. And it said there's an excessive force as well. We actually have a direct liability and a bystander claim against him. Argumentatively, he held down Gonade while she was being tased by other officers. So he was active. However, someone may decide differently, and we argue that's a question of fact. But that's why he's here. In addition to that, the transportation code violation has nothing to do with the underlying interference with public duties case that Alejandro was actually charged with. That's why the district attorney, well, we don't know, but the district attorney dismissed it. The same district attorney who brought that case decided that it was not a good one. And that alleviated us from having a finding against us when we came on the civil side. So, again, there are no findings. That's going to be an issue for the fact finder. The fact that she was charged, et cetera, none of these things are relevant other than the fact that it goes to the claim that we have regarding false arrest. Because there's been no findings made, and that's going to be up to whoever hears the case, Your Honor. In addition to that, he did brush upon qualified immunity, but we don't believe that qualified immunity is something that needs to be addressed right now. It wasn't addressed in the order, and the court never got that far because they threw it out on admissions that were improperly deemed admitted by the court. And then on a relation back claim that we believe that we made properly. In addition, appellees continue to state what Mrs. Alejandro may have or have not. We're going to argue she did not say that in discovery. But the argument is that it doesn't matter what Alejandro thinks about the case. It doesn't matter what anyone thinks about the case except for the fact finder.